The last argument for today is No. 20-2709, Lively v. WAFRA Investment Advisory Group. Mr. Furria? Good morning. May it please the Court. My name is Philip Furria, and I represent Plaintiff Appellant Frank Lively. On this appeal, we're asking this Court to reverse a decision by the trial court which granted the defendant's Rule 12c motion to dismiss. Plaintiff Frank Lively commenced this action alleging that the defendants, WAFRA and Defendant Alma Baraki, engaged in age discrimination and retaliation in violation of the ADEA. The defendants moved to dismiss and attached a number of documents which they claim show that Mr. Lively was not fired due to discrimination but for cause. The trial court ultimately sided with WAFRA and dismissed the ADEA claims. We ask this Court to reverse the trial court's ruling for two main reasons. First, the allegations in Frank Lively's complaint state valid discrimination and retaliation claims under the ADEA. And second, the documents attached to the answer and relied upon on the motion to dismiss do not disprove and do not render implausible Mr. Lively's allegations. The key facts in the complaint are as follows. In 2017, Defendant Alma Baraki became Frank Lively's supervisor. Shortly thereafter, he began making negative comments about Mr. Lively's age and the age of other individuals at WAFRA and indicated that he wished to replace them with younger persons. On one particular instance, on November 13th, 2017, Mr. Alma Baraki made another comment in front of a number of individuals, including Lively's son, that he wanted to replace employees like Mr. Lively with younger persons. The very next day, on November 14th, 2017, Mr. Lively's son, Mr. Al Mubaraki, made another comment. Do you dispute that an ADEA plaintiff must plead but for causation? Is that an issue in dispute here, or is that the appropriate standard? We do not dispute that, but I guess to distinguish, that is actually not a terribly exacting standard because it does not require proof of sole proximate causation. And it leaves open the possibility that a discrimination claim could exist, even when an employer has some other reasons in the mix. It's only required that the adverse employment decision be made due to the discrimination and would not have been made but for the discrimination, so I think you state the applicable standard correctly. Okay. Thank you. No. No. Thank you. So after Mr. Al Mubaraki made these statements on November 13th, 2017, the next day, Mr. Lively reported them to WAFRA. He spoke to human resources, he spoke to the chief operating officer, and they both expressed frustration that Mr. Al Mubaraki continued to act in this way, indicating that they were aware of his behavior. They did nothing about it. He also spoke to someone from WAFRA's parent company. They also did nothing about it and just said that, you know, Mr. Lively should laugh it off as a joke. On April 30th, 2018, Mr. Lively learned for the first time that an individual at WAFRA had alleged that he acted inappropriately towards her. And on that day, he received a letter saying he was suspended without pay. The very next day, May 1st, 2018, without any formal explanation of the conduct involved, he was fired, supposedly for cause. We contend that these allegations support both Mr. Lively's discrimination and retaliation claims. Well, you do have the, let's just call them the notes that your client wrote to this other employee, right? I mean, you don't contend that that was inappropriate for the district court to consider, right? Well, no, on a Rule 12c motion, the district court can consider documents attached to the answer. But that's pretty powerful basis for firing somebody. I mean, they'd be exposing themselves to quite a bit of liability if they had not fired him. Well, you know, I don't necessarily disagree with that contention, but when we look at what was done here, a claim was dismissed at the pleading stage. Mr. Lively has one story as to why he was fired. WAFRA has a different story as to why he was fired. And if you look at the allegations in Mr. Lively's complaint, he has a minimum burden to me just to show that he can plausibly show that there was a minimum inference of discrimination or retaliation. It's again, it's a low burden and it's often put together. So if I could stop you there for a second, this is Judge Mark again. I thought we were on but for causation. That's kind of what I was asking you about earlier. Now you're saying it's minimal inference. Okay. So it seems to be different standards. No. So it is but for causation, but it is a, he, I guess the way that it's been put in case law, if we take a look at the case of Marcus versus Leviton, a plaintiff must plead facts that give plausible support to a minimal inference of the required discriminatory causality. So we are talking about but for causation as opposed to sole proximate cause. But to get there at the pleading stage, there only needs to be plausible support to a minimal inference. One minute. Okay. And so if I could follow up on that, then the Supreme Court recently held in case Comcast that the but for causation standard applies throughout the case, that the standard doesn't change for pleading and for proof. And that seems to reject the specific argument that you're making right now, which is that there's a lower standard at the pleading stage and then it goes up after the evidence is there. Well, I guess, let me clarify that. I'm not suggesting that the standard for causation changes. I'm just suggesting that at the pleading stage, all that's required is that there be an inference of the discriminatory causality. Ultimately, to prove the case, the type of causation needed is but for causation as opposed to sole proximate cause. I see that my time is up. I do have another point to make if I'd be able to make it. Go ahead, Brickley. Okay. The other point I want to make, though, is when we talk about the documents that were attached to the answer, nothing in those documents speaks to Mr. Lively's allegations. All those documents do is present a potential question of fact as to why Mr. Lively was fired and that is not enough to defeat a complaint at the pleading stage. So I'll reserve the rest of my arguments for rebuttal and I thank you very much. Thank you. We'll hear next from, at the lead, Ms. Tannenbaum. Thank you, Judge Park. This is Brett Tannenbaum from Paul Weiss for Defendant Apeliz, Wafra, and Mr. Al Mubaraki and may it please the Court. The District Court correctly dismissed the claims against Apeliz. None of Mr. Lively's arguments undermine the well-reasoned basis for that dismissal. First, the District Court applied the proper pleading standard in dismissing Mr. Lively's age discrimination claims under Rule 12c. Judge Etkins stated that standard as follows. To survive a Rule 12c motion, the facts alleged in the complaint need only give plausible support to a minimal inference of discriminatory motivation. That's at Appendix 179. We agree with your Honor that the but-for causation standard under the ADEA stands for the entire case, but we also do not dispute that Mr. Lively was only required to plead sufficient facts to give plausible support to a minimal inference of discriminatory motivation. And while Mr. Lively contends that the District Court failed to accept his factual allegations as true in deciding that his claim should be dismissed, that's just false. Mr. Lively does not identify anywhere in his papers a single factual allegation that he claims the District Court failed to accept as true. The District Court refused only to accept as true Mr. Lively's threadbare recitals of the elements in his claims and unsupported legal conclusions, which on their own are insufficient to state a claim for relief. Second, the District Court properly considered the documents attached to Walker's answer. As an initial matter, Apeliz did not believe the Court even needs to reach this issue to judgment below because Mr. Lively's allegations on their face fail to raise even the minimal required inference of age discrimination or retaliation. The only specific age-related allegation in the complaint that Mr. Al Mubaraki, Wofford's CEO, told Mr. Lively's son in November 2017 that Wofford needed to replace older employees like his father with younger employees like him, is a stray remark without any alleged nexus to Wofford's decision to fire Mr. Lively in May 2018, nearly six months later. Indeed, Mr. Lively himself alleges in his complaint, in paragraph 11, that Mr. Al Mubaraki praised his work during that intervening period, which further undermines any inference of discriminatory motivation. There are no other specific facts alleged to support the inference that Mr. Lively's termination was based on his age. The general allegation that Mr. Al Mubaraki made age-related comments at unidentified meetings to unidentified employees fails to provide any details that could raise an inference of discrimination. And the assertion that Wofford terminated other employees because of their age is insufficient because it is supported by no facts other than the names and titles of those employees that might raise a plausible inference of age discrimination, such as how old those And in the case that Mr. Furia just cited, this court's summary order in Marcus v. Leviton Manufacturing, this court actually recognized that such an allegation is too skeletal on its own to raise an inference of age discrimination. Mr. Lively's argument, though, that the district court erred in considering the documents attached to Wofford's answer is just an attempt to distract from the insufficiency of his own allegations. The district court was permitted to consider Wofford's answer and documents attached to it, which are part of the answer under Rule 10 and under this court's decision in L7 design. In determining whether, assuming Mr. Lively's well-plaid factual allegations to be true, those allegations raised a sufficiently plausible inference of age discrimination. In fact, Mr. Lively concedes in his brief that the district court was permitted to consider alternative explanations for his termination. And that's precisely what Judge Etkin did when he concluded that the more plausible inference raised by the pleading was that Mr. Lively was fired based on the complaint of sexual harassment and discrimination made against him immediately preceding his termination. Moreover... This is Judge Park. I'm still a bit confused about the standard here that applies. If there's a minimal inference test, and it seems that plaintiff has made out a prima facie case here, doesn't he get to discovery just based on that? Well, respectfully, Your Honor, we don't believe that the plaintiff has raised a minimal inference of age discrimination or retaliation, so no, we don't think that he does get to discovery based on the allegations made in the complaint. That's based on the fact that November's statement was, you argue, a stray remark, and then it Yes. And that there is no other age-related allegation contained in the complaint. The other allegation that I heard Mr. Furrier refer to a moment ago was the fact that he was terminated one day after being informed of the complaints of sexual harassment and discrimination made against him. But that on its own has nothing to do with Mr. Lively's age, and does not, even in combination with the November 2017 comment, raise an inference of age discrimination. So I don't know if McDonnell Douglas applies here, but it seems to me that Mr. Lively has said, you know, there's these comments about his age, and then Woffer's response was, well, no, there was a legitimate reason for his termination, and so that was sort of the step two part of it. And so I thought that under that framework, he has made a prima facie case, and then you have offered an explanation for why it wasn't discrimination. Am I thinking about this wrong? Respectfully, Your Honor, I think so. I think Mr. Lively alleges in his own complaint that the basis for his termination, as communicated to him, was Ms. Kraut's complaint of sexual harassment and discrimination made against him. So we did not offer that explanation for the first time in our answer. We did attach documents that further supported it. But to your initial question about which standard applies, I think you're correct that the McDonnell Douglas framework informs a court's consideration of a motion to dismiss, but it is not the standard to be applied. I believe it is still an evidentiary standard and not a pleading standard. So the elements of the prima facie case under McDonnell Douglas do provide an outline of what is necessary to render a plaintiff's ADEA claims for release plausible enough to survive the motion to dismiss. But I think under this court's decision in Littlejohn, a plaintiff alleging those claims does need only to plead sufficient facts to make that claim plausible in light of that outline. Can I ask you the same question I asked your adversary about this Comcast decision from the Supreme Court a couple of months ago, and it seems to say that the standard but for has to be pled and proved, and it doesn't change for minimal inference and then go up after discovery. And why wouldn't that apply here? My understanding of the Comcast decision, Your Honor, was that it had to do with a Section 1981 claim, and therefore the analysis there may have been more motivated by Title VII. I think on the ADEA, this court's reasoning in Littlejohn does survive, and so while the presumption does shed some light on why the standard is lower for a plaintiff and provide the outlines of the claims that the plaintiff will ultimately have to prove, it is not itself a pleading standard. Okay. Thank you. You're welcome. I wanted to just add one thing. I was discussing the fact that Mr. Lively, in his complaint, alleged that the basis for his termination, as expressed to him, was Ms. Kraut's complaint of sexual harassment and discrimination against him. Mr. Furia has said and wrote in his brief that Mr. Lively disputes the authenticity of the documents attached to Walker's answer that further support that stated basis for his termination. That's not, in fact, true. That issue was never raised in the district court below and hasn't really been properly raised here. Mr. Lively, in his brief, even where he says that he has contested the authenticity of those documents, what he writes is that he's consistently taken the position that Ms. Kraut solicited his involvement in her personal life and that his conduct towards her was welcomed, and I don't take that to be contesting whether Mr. Lively, in fact, authored or sent those documents to Ms. Kraut. Or whether he had noticed them long before he was terminated and before he filed his lawsuit. One minute. And then, just very briefly, Your Honors, on the last issue, the district court did not err in concluding that the fact that Mr. Lively was replaced by someone older than he is, another fact that Mr. Lively does not contest, undermines any inference of age discrimination. Mr. Lively's argument rests on a misreading of Judge Etkin's opinion. Judge Etkin did not find that fact dispositive in dismissing Mr. Lively's claim and found only that it undermined Mr. Lively's conclusory allegation that WAFRA wanted to replace older employees like Lively with younger ones, and therefore tended to support the district court's conclusion that there was no plausible inference of discriminatory motivation. If there are no further questions from the court, the judgment of the district court should be affirmed. Thank you. Thank you, counsel. Mr. Puria, you have three minutes remaining for rebuttal. Thank you, Your Honor. I had the pleasure of listening to an oral argument last week wherein I heard your learned colleague, Judge Calabresi, put it this way, that it's not the job of courts to dismiss claims. The job is to foster those claims and let them go through to resolution. The situation here, the allegations in the complaint meet that minimum burden, and I thank my colleague, Ms. Tenenbaum, because I believe we're in agreement on what the burden was, a minimum burden, to show that there was support for the proposition of discrimination or retaliation. And here, when we take a look at a number of these factors, which is Mr. Al-Mubaraki's apathetic response to those complaints and the suspicious way that Mr. Lively was informed of the complaint against him, suspended and fired all within 24 hours. So based on those put together, we contend that he stated his valid claims because there's usually not a smoking gun in these types of cases. A plaintiff has to piece together a number of issues, and we contend that WAFRA seized it as a pretext to shield its true motives. So in that way, we do get into but-for causation. We say that these facts dictate that and show that if not for age discrimination, he wouldn't have been fired in the way he was because WAFRA didn't even conduct an investigation into those claims. The facts indicate that they found the reason they were looking for and they acted on them. In addition, if we take a look at these documents, which supposedly prove that Mr. Lively was fired for cause, they themselves are not, you know, without fault. And they certainly don't rise to the level of rendering Mr. Lively's allegations implausible. One minute. There's no evidence in the papers to suggest whether WAFRA even possessed these documents when they fired Mr. Lively, let alone whether they actually considered them. If you look at the transcript, which the lower court sought to cite to and quote from, the top of it says Walden, Moffett, and Horan. That's a law firm. That law firm represented Sabine Kraut in an EEOC claim she filed a month after the firing. So there's a real question as to what WAFRA's true motivations were, that the question of fact, and it's not the job of a court to decide questions of fact at the pleading stage. So the district court erred when it did so. We ask that Mr. Lively be given the opportunity to take his case back into the district court and proceed into discovery. Thank you. Most of your opponent's arguments seem to me to focus on whether there was sufficient pleading in the complaint itself of age discrimination, where you had the November 17 remarks essentially was the key. The only thing that specifically focused on Lively's age. And then it was followed by a period of keeping him for a longer period of time and our compliments to his, his work history there. And so why, why isn't her argument that that was just a stray remark which is not, not, not sufficiently actionable given the time sequence and also the intervening activity and that the rest of it is, is, is all just conclusively sufficient. Why wouldn't this case have been dismissed under 12B6? Well, this court has held that stray remarks can be more ominous when considered in the context of other aspects of a complaint. And this court has noted that clever men may easily conceal their motivations. That's a quote from the Vega case from this court. So it's not just a stray remark. It's a stray remark, maybe on its own, but when viewed in the greater context of the Wafra individuals noted that they were aware of the way Mr. Al-Mubaraki was acting. The fact that there was a, a campaign to remove older individuals from Wafra. And then the, the extremely weird way in which they obtained a complaint against Mr. Lively and pretty much immediately fired him without any investigation. You have to put them all together. These are bits and pieces of information and together they support an inference of discrimination, even if they wouldn't be enough on their own. Thank you very much. Thank you, counsel. We'll take it under advisement.